J-S44011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: MITCHELL E. AND KARLIE M. ROTH IRREVOCABLE TRUST | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MIRIAM ROTH | : : : : : : : : | |
| | : | No. 1409 EDA 2024 |

Appeal from the Order Entered April 18, 2024
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s): 0444-2023

BEFORE: LAZARUS, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.: **FILED APRIL 1, 2026**

Miriam Roth appeals from the order, entered in the Court of Common Pleas of Delaware County, Orphans' Court Division, confirming the appointment of Edward L. Perkins ("Trustee") as trustee of the Mitchell E. and Karlie M. Roth Irrevocable Trust ("Trust"). We affirm.

The Honorable Kathrynann W. Durham set forth the factual and procedural history of this matter as follows:

> Mitchell E. Roth and Karlie M. Roth [("Settlors")] created the [] Trust[,] which became effective on August 7, 2002. [The Trust's sole asset is a MassMutal insurance policy with a death benefit of $700,000.00.] Article XXI of the Trust provided that Dennis C. Reardon [Esquire,] was appointed to serve as trustee during the lifetimes of Karlie and Mitchell Roth[;] however[,] he [resigned] on October 23, 2010. At the April 18, 2024 hearing, [Walter J. Timby, III, Esquire, counsel for the now-Trustee,] stated that Mitchell Roth appointed John Custer, Jr., [Esquire,] who was Mitchell Roth's estate attorney, as successor trustee pursuant to paragraph [XXI.C.] of the Trust. [Attorney] Custer [acted as] the successor trustee from October 29, 2010[,] until his resignation

[on] October 31, 2017. After [Attorney] Custer's resignation, Linnea Roth accepted the appointment as successor trustee and [] remained as such until February 2, 2022. Mitchell Roth died on December 19, 2017, and Karlie Roth died [on] November 30, 2021. Linnea attempted to appoint the designated successor [named] in the Trust, Paul Cruz, as trustee[;] however, he refused. The designated corporate trustee, Bryn Mawr Trust, also refused. Therefore, [Linnea] remained as trustee until she executed a resignation and appointed [Trustee.]

[On July 17, 2023, Trustee filed a petition to, inter alia, confirm his appointment as trustee. A citation was issued, directed to all respondents including Roth, directing them to show cause why:

A. Roth should not produce "any trust document executed by Settlors;

B. Roth should not produce all MassMutual insurance policy proceeds delivered to her;

C. The appointment of Attorney Perkins as trustee should not be confirmed;

D. The trust should not be modified to eliminate the necessity for a corporate trustee; and

E. The fee agreement and counsel fees of counsel for Trustee should not be approved.

**See** Citation, 7/20/23. No respondent, including Roth, filed an answer to the petition.]

A [hearing] was held to confirm the appointment of [Trustee], beginning on March 5, 2024. At the [hearing], [Attorney] Timby stated that he was contacted multiple times by telephone and email by [Roth], who represented that there was another trust which superseded the Trust and that [Roth] was the trustee of the superseding trust.[1] [Attorney] Timby stated that a representation was made to MassMutual that [Roth] and her sister

_____

[1] Roth stated at the March 5, 2024 hearing that "[t]here is a document that makes . . . my sister and I co-trustees and that was done legally and in accordance with [20 Pa.C.S.A. §] 7764." N.T. Hearing, 3/5/24, at 17. Despite being cited to produce any such trust document, and after repeated requests from Attorney Timby, as well as the court during the March 5, 2024 hearing, Roth never produced the alleged document.

Elaina were trustees for the Trust, and MassMutual then issued a check[,] which went uncashed due to the lack of documentation that [Roth] and Elaina were the trustees.

[Roth's] previous attorney, Thomas Hardy[, Esquire], stated that there was a settlement being discussed [among] the parties involved that would have separated the Trust into two separate trusts and had them operate consistent with the agreement. [Attorney] Hardy said this agreement would be that [Attorney] Timby's law firm would serve as the trustee for Elaina [] and that [Roth] would serve as the trustee for her and Lee Roth, Elaina and [Roth]'s brother. [Attorney] Timby stated that this agreement was never reduced to writing and[,] therefore[,] the case was brought to trial. [Attorney] Hardy was then excused[,] as [Roth] no longer wanted his assistance [or] wanted him there. The March 5, 2024 [hearing was] continued to April 8, 2024 to give [Roth] time to hire new counsel.

On April 8, 2024, [Attorney] Timby filed a motion for case management conference and discovery protective order. A hearing on this motion was held on April 10[,] 2024, at which [Roth] did not appear. The Orphans' Court [noted] that[, in his petition, Attorney] Timby made allegations that [Roth] had failed to follow the Orphans' Court Rules, specifically [Del.Co.O.C.R.] 7.1B[, relating to practice as to depositions, discovery, production of documents and perpetuation of testimony], and had not gotten permission to conduct discovery. The Orphans' Court verified that no petition had been docketed, and that it would be impossible for [Attorney] Timby to comply with discovery on April 10, 2024[,] because the [hearing] was scheduled for April 18, 2024. [Attorney] Timby also stated that [Roth] had sent him many motions and objections that were not properly docketed with [the] Orphans' Court. For these reasons, the Orphans' Court granted [Attorney] Timby's discovery protective order.

On April 18, 2024, the [hearing] resumed. At the [hearing], [Attorney] Timby, Linnea Roth, [and] Lee Roth [appeared, as well as Sony Hogan, a friend of Elaina Roth, who] appeared for [Elaina] because Elaina was ill but available by telephone. [Roth] did not appear.

. . .

Following the April 18, 2024 [hearing], an order was issued confirming [] Perkins as successor trustee of the Trust. [Roth]

then hired new counsel and filed [a timely[2] notice of appeal on May 20, 2024].

Orphans' Court Opinion, 9/12/24, at 3-7 (unnecessary capitalization and citations to the record omitted).

On June 10, 2024, the Orphans' Court issued an order directing Roth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days of the date the concise statement order was entered. Roth filed her Rule 1925(b) statement late,[3] on July 10, 2024, in which she raised the following claims:

> [1.] The [Orphans' Court]'s reasons are not discernible from the record.
>
> [2.] The [Orphans' Court]'s decision is not supported by the evidence.

_____

[2] Roth had 30 days from April 18, 2024, to file a timely notice of appeal. **See** Pa.R.A.P. 903(a) (notice of appeal must be filed "within 30 days after the entry of the order from which the appeal is taken"); Pa.R.A.P. 108(b) ("The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)."). Because May 18, 2024, was a Saturday, Roth timely filed her notice of appeal on Monday, May 20, 2024. **See** 1 Pa.C.S.A. § 1908 (excluding weekends and holidays from computation of time when last day of time period falls on weekend or holiday).

[3] Generally, an appellant who fails to timely file its Rule 1925(b) statement waives all issues raised on appeal. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Lord**, 719 A.2d 306 (Pa. 1998). However, here, the notice of filing of the order sent by the Clerk of the Orphans' Court pursuant to Pa.R.O.C.P. 4.6 indicates that a copy of the order was mailed only to Attorney Trimby and not Roth. Accordingly, we decline to find waiver based on the untimeliness of Roth's Rule 1925(b) statement. **See In re L.M.**, 923 A.2d 505, 510 (Pa. Super. 2007) (declining to find waiver where docket does not show notice of entry of a Rule 1925(b) order provided to appellant).

[3.] The [Orphans' Court] committed an abuse of discretion.

[4.] The [Orphans' Court] lacked jurisdiction over part of the matter.

[5.] The [Orphans' Court] erred in exceeding the relief requested by [Appellees].

Pa.R.A.P. 1925(b) Statement, 7/10/24, at 3-5.

In the statement of the questions presented included in her brief, Roth raises the following claims:

[1.] The Orphans['] Court erred by issuing a discovery protective order that stayed and precluded discovery when no discovery had happened at all which suppressed case-determinative evidence and deprived [Roth] of due process.

[2.] The Orphans['] Court erred by not seeing new evidence that is significant, material[,] and outcome altering.

[3.] The Orphans['] Court erred by not dismissing the case in which the plaintiff/appellant [sic] lacks standing and lacks interest in violation of 231 Pa.Code. r. 5.7 criteria for who can become a court[-]appointed trustee court [sic].

[4.] The Orphans' Court erred in issuing a court order when it had not heard oral arguments or rule on [Roth's] eight outstanding motions.

[5.] The Orphans['] Court erred procedurally in holding court proceedings and trials when the defendants [and] beneficiaries were not present and not represented by counsel and not even present during trials and proceedings in violation of due process.

[6.] The Orphans['] Court erred by expressing statements during trial indicating favoritism towards plaintiff/appellee in violation of the duty to be [and] appear "impartial and unbiased."

[7.] The Orphans' Court erred by making procedural errors depriving [Roth] of due process.

- 5 -

Brief of Appellant, at 2-3 (renumbered for ease of disposition).[4]

Pennsylvania Rule of Appellate Procedure 1925(b)(4)(vii) provides that "[i]ssues not included in the [Rule 1925(b) statement] . . . are waived." Pa.R.A.P. 1925(b)(4)(vii). Here, none of the claims Roth raises in her statement of questions involved is contained in her Rule 1925(b) statement. However, Rule 1925(b)(4)(vi) provides that, where an appellant in a civil case "cannot readily discern the basis for the judge's decision" and the appellant prefaces its Rule 1925(b) statement with an explanation as to why the statement has identified errors only in general terms, "the generality of the statement will not be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(vi). Here, Roth's Rule 1925(b) statement contains such an explanation and, for that reason, we will not find waiver.

Roth first claims that the Orphans' Court erred by issuing a discovery protective order. This claim is meritless where Roth failed to petition the court to allow her to conduct discovery in accordance with the rules of court. Pennsylvania Rule of Orphans' Court Procedure provides that "[t]he court, by local rule or order in a particular matter, may prescribe the practice relating to depositions, discovery, production of documents, perpetuation of testimony, and subpoenas to attend and testify." Pa.R.O.C.P. 7.1. The

_____

[4] We note that, in the argument section of her brief, Roth raises claims that are not contained in her statement of questions involved. Pennsylvania Rule of Appellate Procedure 2116 provides that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Accordingly, Roth has waived those claims and we do not address them here.

Delaware County Orphans' Court has promulgated its own local rule with respect to discovery, which provides as follows:

(1) Leave to take depositions, or to perpetuate testimony, or to obtain discovery or the production of documents, **may be granted only on petition upon cause shown**, except upon agreement of parties and counsel, or except when such depositions, perpetuation of testimony or other discovery tools are required by statute or rule (e.g., in a guardianship proceeding).

(2) Petitions filed pursuant to this Del.Co.O.C. Rule 7.1B shall include a description of all efforts made to resolve discovery issues informally. Petitions shall also state the identity of the persons who are to be deposed, the testimony that is to be perpetuated, the documents that are to be produced, and a description of any other discovery requested. The petition shall also state the reasons why the aforementioned discovery is necessary and relevant to the litigation.

Del.Co.O.C.D.R. 7.1B (emphasis added).

This matter commenced on July 17, 2023, with the filing of Trustee's petition to confirm his appointment. Roth did not file a response to the petition.[5] Between July 17, 2023, and the time of the first hearing on March 5, 2024, Roth never sought discovery, through petition or otherwise. When the Orphans' Court rescheduled the hearing for April 18, 2024, the court noted that "[a]ll dates in the Trial Assignment and Case Management Order of November 27, 2023, shall adjust accordingly." Trial Assignment and Case Management Order, 3/6/24. Notably, the November 27, 2023 order provided that discovery was to be completed no later than February 26, 2024, seven

_____

[5] Roth purportedly filed preliminary objections to the petition. However, the docket report does not reflect the filing of preliminary objections and the certified record on appeal does not contain such a pleading.

days before the date of the first scheduled hearing. Thus, in light of the new hearing date, discovery was required to be completed no later than April 11, 2024—seven days before the new hearing date.

Roth, who was proceeding pro se, began sending discovery requests to Trustee's counsel without filing a petition with the court, as required by Local Rule 7.1B(1). "To prevent any interruption of the trial scheduled for April 18, 2024," Trustee filed a motion for case management conference and for a protective order regarding the discovery requests and motions received by Trustee from Roth. On April 11, 2024, seven days before the hearing, the Orphans' Court entered an order precluding Roth from further discovery. As Roth failed to comply with the local discovery rules by filing a petition with the court, we can discern no abuse of discretion on the part of the Orphans' Court in precluding her from discovery in accordance with its previously issued case management order.

Roth's next four claims—that the court erred by "not seeing new evidence," by not dismissing the case in which Trustee lacks standing, by holding a hearing when beneficiaries were not present and not represented by counsel, and by not hearing oral argument—are similarly meritless because, despite the Orphans' Court having granted a continuance specifically so that Roth could obtain new counsel, Roth failed to appear for the April 18, 2024 hearing. As a result of her failure to appear, as well as her failure to file a written response to Trustee's petition, she waived her opportunity to present evidence or argue her position that the Trustee lacks standing. *See* Pa.R.A.P.

302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Roth next argues that the Orphans' Court "erred by expressing statements during trial indicating favoritism towards [Trustee] in violation of the duty to be [and] appear 'impartial and unbiased.'" Brief of Appellant, at 72. Specifically, Roth argues that Judge Durham displayed bias when she "admonished [Roth] on the record for accusing [Attorney Timby] of lying, by stating that [Attorney Timby], due to their 20-year-long relationship, had 'never lied in her courtroom.'"[6] *Id.* at 73. Roth has waived this claim by failing to timely raise it.

During the March 5, 2024 hearing, Roth continually interrupted and argued with the trial court and counsel, *see* N.T. Hearing, 3/5/24, passim; attempted to record the proceedings using her cell phone, *see id.* at 24, 55; accused Attorney Timby of being an alcoholic, a liar, "dumb," and suffering from dementia, *see id.* at 15, 26; and refused to examine her own witness. *See id.* at 35, 43. Roth's behavior resulted in Judge Durham being compelled to call a sheriff into the courtroom. *See id.* at 21.

After an incident in which Roth interrupted her attorney and accused him of lying, the following exchange took place:

> THE COURT: This isn't Judge Judy or any of those shows you see on TV. Your behavior does not comport with the rules of Orphans' Court or the [R]ules of Civil Procedure. I know you're not an

---

[6] As will be demonstrated, infra, Roth mischaracterizes the statements made by the trial court.

attorney or I'm assuming you're not an attorney, so I've been trying to give you great leeway, but I want to assure you I have no problem having the sheriffs come in and remov[e] you if your behavior persists in this way.

[ROTH]: Your Honor I have done nothing . . .

THE COURT: You're not . . .

[ROTH]: To deserve that threat.

THE COURT: You're not, you're not, you're not, you're not going to interrupt me . . .

[ROTH]: Whatsoever.

THE COURT: You're not going to interrupt Mr. Hardy. That behavior will not be allowed.

. . .

THE COURT: Now I want you to see, the sheriff has been called. So[,] you can either calm down and listen or I can have the sheriffs remove you, it's really up to you, they're happy to do it either way, but Mr. Hardy is an officer of this court, as is Mr. Timby. Mr. Timby has appeared in front of me a dozen times since December, correct[,] Mr. Timby? On other cases, not this one. . . . He has always been professional and as someone who has worked [in] this community, Mr. Timby has one of the highest records of integrity and honesty with the bar. So, and . . .

[ROTH]: Am I allowed to laugh?

THE COURT: Yes[,] of course you are.

. . .

THE COURT: Lawyers get sworn in [sic] they always have to have candor with the court.

[ROTH]: Right.

THE COURT: So[,] I have not had an attorney that has committed perjury and I've been a judge for over 22 years.

*Id.* at 19-22.

- 10 -

"Once the trial is completed with the entry of a verdict, a party is deemed to have waived his right to have a judge disqualified, and if he has waived that issue, he cannot be heard to complain following an unfavorable result." **Reilly by Reilly v. Se. Pennsylvania Transp. Auth.**, 489 A.2d 1291, 1300 (Pa. 1985), citing **Commonwealth v. Corbin**, 291 A.2d 307 (Pa. 1972). Here, Roth filed a motion for recusal on April 24, 2024, six days **after** the Orphans' Court issued its order confirming the appointment of the substitute trustee, and nearly two months after the complained-of in-court statements by Judge Durham. Having failed to timely raise the issue of recusal, Roth has waived it.[7] **See Reilly**, **supra**.

Finally, Roth claims that the Orphans' Court erred by making procedural errors depriving her of due process. Roth argues that she "submitted an oral motion requesting the [c]ourt to order access to $50,000.00 of the [t]rust assets to pay for legal fees so that the [t]rust and beneficiaries could retain counsel." Brief of Appellant, at 63. Roth asserts the court "summarily dismissed" that request and, in doing so, "undermined [the beneficiaries'] ability to adequately defend their interests and to meaningfully participate in the judicial process." **Id.** at 64. Roth argues that she did not waive her right

---

[7] Even if Roth had not waived this claim, she would be entitled to no relief. As noted above, at the first hearing in this matter, Roth consistently failed to maintain proper decorum and repeatedly hurled unfounded and scurrilous insults at Attorney Timby, in particular. In making the statements that she did, Judge Durham was simply attempting to defend Attorney Timby's reputation in the face of Roth's abuse and to point out to Roth that all attorneys appearing in court have an obligation of candor to the court.

to be present and, in fact, "requested in writing a continuance for multiple reasons as found in her email to the [c]ourt's chambers sent on April 17, 2024." *Id.* at 66. Roth is entitled to no relief.

We begin by noting that Roth does not direct us to the place in the record where she orally requested the court to access funds from the trust to secure counsel,[8] *see* Pa.R.A.P. 2119(c), and our review of the sole transcript in which Roth appears reveals no such request. In any event, Roth was represented by counsel at the March 5, 2024 hearing but she summarily dismissed him after the hearing had commenced.[9] As noted above, Judge Durham granted Roth a continuance to secure new counsel for the hearing, which Roth did not do. Having already granted a nearly two-month continuance in the matter, the Orphans' Court was within its discretion in denying yet another continuance and, instead, proceeding with the hearing. *See Commonwealth v. Prysock*, 972 A.2d 539, 541 (Pa. Super. 2009) ("It

---

[8] We note that Roth declared on the record that she is "a millionaire." N.T. Hearing, 3/5/24, at 45.

[9] The following exchange took place:

[ROTH]: I'd like to speak on my own behalf please. . . .

THE COURT: And does [Attorney] Hardy not represent you?

[ROTH]: No[,] he is not [sic].

N.T. Hearing, 3/5/24, at 10.

- 12 -

is well[-]settled that the decision to grant or deny a request for a continuance is within the sound discretion of the trial court.").

Order affirmed. Motion to quash denied.[10]

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2026

---

[10] We concur with Trustee that Roth's brief largely fails to comply with the Rules of Appellate Procedure and relies on matters dehors the record and that Roth has failed to submit other filings in accordance with the rules. Nevertheless, as we were able to glean the essence of Roth's arguments, we have reached the merits of her appeal.